1998 ME 144

**Patricia LEWIS**

v.

**TOWN OF ROCKPORT et al.**

Supreme Judicial Court of Maine.

Argued March 2, 1998.

Decided June 9, 1998.

Ervin D. Snyder (orally), Snyder & Jumper, Wiscasset, for plaintiff.

Paul L. Gibbons (orally), Gibbons & Calderwood, L.L.P., Camden, for Town of Rockport.

Elizabeth E. Biddle (orally), Strout & Payson, P.A., Rockland, for Maine Coast Artists.

Before ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

**1048** ■

DANA, Justice.

[¶ 1] Patricia Lewis appeals from the judgment entered in the Superior Court (Knox County, *Kravchuk, J.*) affirming the decision of the Rockport Zoning Board of Appeals granting a special exception in favor of Maine Coast Artists (MCA). MCA had sought the special exception to facilitate the expansion of its existing building. Lewis contends, *inter alia*, that the zoning board misinterpreted the portions of the town's land use ordinance dealing with special exceptions and the town's shoreland zoning ordinance. We agree and vacate the judgment.

[¶ 2] MCA owns a building in Rockport in which it operates a not-for-profit art gallery. In 1993 MCA applied for a special exception to allow it to expand and modify that building, which was granted by the zoning board. Shortly thereafter, the code enforcement officer (CEO) issued a building permit to MCA. MCA did not commence construction after receiving the permit, and over time it revised the plans for the modification of its building. In September 1996 MCA requested that the zoning board amend the special exception to reflect the revised project.

[¶ 3] Acting on this request for a revision to the special exception, and treating it as a new application, the zoning board found that the then-existing MCA building was a non-conforming structure, pursuant to the town's land use ordinance, because: (1) the lot size was less than the required 12,000 square feet; (2) the building encroached on the re-

quired six-foot sideyard setback; and (3) the building, which was 54 feet tall at its highest point, exceeded the maximum allowable height of 34 feet. The zoning board also noted that the proposed modifications and additions to the building would further violate the height and sideyard setback requirements of the land use ordinance. In particular, MCA planned to add an external elevator shaft that would reach a height of 47 feet and would encroach into the sideyard.

[¶ 4] Citing section 505 of the land use ordinance, the zoning board found that, even though portions of the new construction would violate the land use ordinance, the proposed structure would be no more non-conforming than the then-existing structure, and thus that the proposed building could be approved by a special exception.[1] The zoning board found that the proposed project met the requirements for a special exception.

[¶ 5] The zoning board also found that the shoreland zoning ordinance's prohibition against expansion of nonconforming structures within 100 feet of the "normal high water mark" of waterways did not apply to the MCA project. In reaching that conclusion, the zoning board found that the prohibition related only to tidal waters, and the waterway closest to and possibly within 100 feet of the MCA building is a nontidal stream.

[¶ 6] In September 1996 the zoning board voted unanimously to grant to MCA a special

---

1. Section 505 of the land use ordinance provides:

   Upon approval of the Zoning Board of Appeals, a nonconforming aspect of a lot, structure or use may be changed such that it is less nonconforming or no more nonconforming than the existing situation. In making its determination, the Board of Appeals shall apply the standards of section 703.3 *Special Exceptions* and, if applicable, Section 1416.7 *Appeals in Shoreland Areas.*

   Section 703.3 empowers the zoning board to grant only those special exceptions "which are authorized by this Ordinance and which are specifically listed as special exceptions." That section articulates seven criteria that the petitioner must establish to the satisfaction of the zoning board:

   1. That the proposed use will not have an adverse effect on the natural environment and/or that the site for that use does not have unusual physical characteristics....

2. That the proposed use would not significantly depreciate the value of surrounding property.
3. That the proposed use will not create an unreasonable demand for public services....
4. That the proposed use would not result in an inordinate amount of pedestrian and/or vehicular traffic....
5. When put to any other use, a structure originally designed as a dwelling shall not be put to a use that would cause rapid deterioration of the structure.
6. That the proposed use will not have an adverse effect on surrounding property in consideration of the expanse of pavement, intensify [sic] of use and the building's(s') bulk and material.
7. That the proposed use will not have an adverse effect on the use and quiet possession of surrounding property owners....

exception. In November 1996 Lewis, the owner of a property abutting the MCA property, filed a complaint in the Superior Court seeking judicial review of the zoning board's action. The following month the CEO issued a new building permit for the project.

[¶ 7] Lewis appealed to the zoning board the CEO's issuance of the second building permit to MCA.[2] The zoning board denied Lewis's appeal in January 1997.[3]

[¶ 8] Lewis filed a second complaint in the Superior Court, this one seeking judicial review of the January 1997 action of the zoning board. The court (*Atwood, J.*) granted Lewis's motion to consolidate her two complaints. In October 1997 the court (*Kravchuk, J.*) affirmed the decisions of the zoning board. MCA has since completed the modification and expansion of the building.

[¶ 9] When the Superior Court acts as an intermediate appellate court, we review directly the decision of the municipal board of appeals for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Herrick v. Town of Mechanic Falls,* 673 A.2d 1348, 1349 (Me. 1996) (citation omitted).

[¶ 10] With respect to the special exception, the zoning board employed a "limit of nonconformance" theory to reach the conclusion that the expanded and modified building would be "no more nonconforming" than the then-existing building. According to the zoning board, the "limit of nonconformance" is the extent to which an existing building violates zoning requirements. Provided that any addition to that nonconforming building would not violate zoning requirements to any greater degree than the building already does, the addition would not exceed the limit of nonconformance and it would be no more nonconforming than the existing building. In the instant case, the zoning district in which the building is located requires a six-foot sideyard setback and it imposes a maximum height of 34 feet. The original MCA building is 54 feet high and a corner of the structure encroaches on the sideyard by less than one foot. Thus, employing the "limit of nonconformance" theory, the zoning board reasoned that, as long as the addition to the building would not encroach more than the several inches into the sideyard the existing building already does, and it would not be taller than 54 feet, the completed building would be no more nonconforming than the original structure, and thus could be approved by a special exception. We find this reasoning unconvincing.

[¶ 11] The central issue on appeal is whether the zoning board erred by interpreting section 505, and in particular, the phrase, "no more nonconforming," in this manner. Interpretation of a zoning ordinance is a question of law. *Town of Union v. Strong,* 681 A.2d 14, 17 (Me.1996). The language at issue "must be construed reasonably and with regard to both the ordinance's specific object and its general structure." *Id.* at 18 (citation omitted). "Each undefined term is given its common and generally accepted meaning unless the context of the statute clearly indicates otherwise." *Id.* (citation omitted).

[¶ 12] As we stated in *Gagne v. City of Lewiston,* 281 A.2d 579 (Me.1971), "[t]he spirit of the zoning ordinances and regulations is to restrict rather than to increase any nonconforming uses, and ... provisions of a zoning regulation for the continuation of such uses should be strictly construed." *Id.* at 581 (quotation omitted); *but see Oliver v. City of Rockland,* 1998 ME 88, ¶ 9, 710 A.2d 905, 908 ("This rule of construction, however, does not preclude a town from adopting a policy permitting the continuance of nonconforming structures and enacting an ordinance which furthers that policy by its explicit terms.").

[¶ 13] By the zoning board's reasoning, if a one-square-foot portion of a fifty-

---

**2.** Lewis challenges on appeal to this Court the first issuance by the CEO of a building permit in June 1996. Because Lewis did not appeal that action to the zoning board of appeals, that issue is not now properly before us.

**3.** Lewis also challenges on appeal to this court the zoning board's denial of her appeal of the planning board's site plan approval. Because we find that the zoning board erred by granting to MCA the special exception, we need not address the site plan issue.

foot-long, one-story building extended one foot into the required sideyard, it would be permissible to modify the building to extend the entire side of the building one foot into the sideyard, thus increasing the square footage of nonconforming space from one square foot to fifty square feet, provided the owner otherwise qualified for a special exception. Giving the phrase "no more nonconforming" its common and generally accepted meaning, and strictly construing that language, we cannot agree with the conclusion reached by the zoning board. Any modification of or addition to a building that would increase the square footage of nonconforming space within the building, even if it would not increase the linear extent of nonconformance, does make the building more nonconforming. Thus, as a matter of law, the zoning board misinterpreted the land use ordinance to allow, by special exception, any modification of or addition to the existing MCA building that would result in an increase in the square footage of nonconforming space.

[¶ 14] Turning to the zoning board's interpretation of the shoreland zoning ordinance,[4] if it should become relevant on remand, we also find error in the board's findings. The zoning board found that the shoreland ordinance applied only to tidal water bodies, and that it did not apply to streams. Contrary to that conclusion, the ordinance clearly places restrictions on expansions of nonconforming uses in close proximity to streams,[5] regardless of whether they are tidal water bodies. The town acknowledged in its brief on appeal to this Court that the ordinance indeed did apply to nontidal watercourses, including streams.

[¶ 15] The zoning board did acknowledge that there was a stream in close proximity to the MCA building, but it found only that there was "no credible evidence that the building addition is located within 100 feet" of that stream. The zoning board erred by implying that the burden was on the party opposing approval to show that the provisions of the shoreland zoning ordinance governed MCA's project. To the contrary, the burden must be on the applicant, MCA, to prove that its project complies with the provisions of the shoreland zoning ordinance. *See Lakes Envtl. Ass'n v. Town of Naples,* 486 A.2d 91, 96 (Me.1984) (burden of proving that subdivision requirements are met is on applicant).

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment for Lewis on her appeal of the board's grant of a special exception and the CEO's grant of the second building permit.

---

4. At the time of oral argument, there was some confusion regarding which shoreland zoning ordinance should have been applied to MCA's application. The Town of Rockport enacted a shoreland zoning ordinance in 1992. In 1996, the Town replaced the first ordinance with a second one. Because it failed to submit the newer ordinance to the Department of Environmental Protection for necessary approval, however, the Department notified the Town that the 1996 ordinance was inoperative and the 1992 ordinance remained in effect. Since oral argument, the Department has conditionally approved the 1996 ordinance with some modification.

5. Pursuant to either the 1992 or 1996 version of the shoreland zoning ordinance, no modification of any portion of a nonconforming structure could occur within 100 feet of a stream. Pursuant to the Department's conditional approval it appears that this prohibition extends only for 75 feet from a stream. Having never passed on this aspect of the shoreland ordinance with respect to this project, the determination of what prohibition should be applied is best left to the zoning board.