STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

OCT 5 7 59 AM '01

SUPERIOR COURT
Docket No. AP-01-16

ERNEST and SHIRLEY FIELDER,
     Plaintiffs,

v.

**ORDER ON 80B APPEAL**

TOWN OF RAYMOND and
JOHN COOPER
     Defendants.

## FACTUAL BACKGROUND

The record before the Court demonstrates the following facts. The plaintiffs, Ernest and Shirley Fielder (the "Fielders"), own and reside in a house adjacent to Sebago Lake in Raymond, and located in a shoreland zoning district known as the "Limited Residential/Recreational I District." Because of the home's location, its zoning is governed by the Town of Raymond Shoreland Zoning Ordinance (the "Ordinance"), which requires homes in this district to be a minimum of one hundred feet from the normal high-water line of the lake. RAYMOND, ME. SHORELAND ZONING ORDINANCE, § 15 (A)(3)(d). The Fielders' house was built prior to the enactment of this setback requirement, and does not conform to it. Attached to the house is a deck also built prior to the adoption of the setback requirement. At its closest point, the deck is located only thirty-seven feet from the high-water line of the lake. The deck currently has a partial roof over it, but the roof does not extend to the edge of the deck.

The Fielders filed an application with Raymond's Code Enforcement Officer,

John Cooper ("Cooper"), for permission to fully enclose the deck. Cooper denied the application because he concluded that by enclosing the deck, the Fielders would be bringing the house closer to the lake, in violation of the Ordinance.

On December 26, 2000, the Fielders appealed Cooper's decision to Raymond's Zoning Board of Appeals (the "Board"), which held two public hearings, the first on January 29, 2001, and the second on February 26, 2001.

At the hearing on January 29, the Board heard testimony from Cooper, whose reason for denying the permit was a long-standing interpretation of the Ordinance not to allow people to enclose decks located within the minimum setback in a shoreland area. One Board member stated the reasons for this interpretation:

> what would happen is applicants would come in for a request to put a porch or a deck on their property and at that time the board would - was kind of liberal on those sort of things and we would say ok, and then 6 months to a year later the individual would come in and say well we would like to enclose that porch, and the board being rather liberal and wanting people to be able to have free use of their property, we would grant that and darned if a year after the same individuals wouldn't come in asking if they could have a permit to put a deck off their new room.

*  *  *

> As far as the extension of decks turning them into screen rooms, screened or sunrooms, eventually goes through to turn it into a bedroom and then further request for an application to build off those. What we were doing was creeping closer and closer towards the lake. So at some point . . . [we] established the policy that said as far as encroachment on the lake is concerned, we were going to treat decks the same way as a part of the structure, the same way as were governed by the variance requirement.

After adjourning the first hearing in order to consult with the town's attorney, the Board reconvened for a second public hearing on February 26, 2001. At the end of that hearing, the Board voted unanimously to deny the Fielders'

application after it determined that their interpretation of the Ordinance did not permit the enclosure of the deck.

On March 23, 2001, the Fielders appealed pursuant to M.R. Civ. P. 80B, and are asking the Court to vacate the Board's decision. As reasons therefor, the Fielders state that the Board's decision constitutes an error of law, is not supported by substantial evidence, constitutes an abuse of discretion, and is in violation of Raymond's Shoreland Zoning Ordinance. For the reasons discussed below, the Board's decision is vacated and this matter is remanded for further proceedings consistent with this decision.

## DISCUSSION

"Interpretation of a zoning ordinance is a question of law" for the Court. Lewis v. Town of Rockport, 1998 ME 144, ¶ 11, 712 A.2d 1047, 1049; Oliver v. City of Rockland, 1998 ME 88, ¶ 8, 710 A.2d 905, 908. "A court must interpret an ordinance by first looking at the plain meaning of the language to give effect to legislative intent." Banks v. Maine RSA #1, 1998 ME 272, ¶ 4, 721 A.2d 655, 657 (citation omitted). "The terms or expressions are construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." Oliver, 1998 ME 88, ¶ 8, 710 A.2d 905. "Undefined terms should be given their common and generally accepted meaning unless the context clearly indicates otherwise." Id. Additionally, "an agency's interpretation of a statute or regulation it regularly administers is to be granted great deference and must be upheld unless the regulation plainly compels a contrary result." Wright v. Town of Kennebunkport,

3

1998 ME 184, ¶ 5, 715 A.2d 162, 164 (citation omitted). An agency's construction, however, "is not conclusive on the Court." Id.

Because the Fielders' home is a nonconforming structure, any desired expansion must meet the requirements of section 12 (C) of the Ordinance, which states, in relevant part:

> 1. Expansions: A non-conforming structure may be added to or expanded after obtaining a permit from the same permitting authority as that for a new structure, if such addition or expansion does not increase the non-conformity of the structure.
>
> Further Limitations:
>
> a. [I]f any portion of a structure is less than the required setback from the normal high-water line of a water body . . . that portion of the structure shall not be expanded in floor area or volume by 30% or more during the lifetime of the structure.
>
> * * *
>
> c. No structure which is less than the required setback from the normal high-water line of a water body . . . shall be expanded toward the water body . . . .

RAYMOND, ME. SHORELAND ZONING ORDINANCE, § 12 (C)(1)(a) and (c) (2000).

The Fielders argue that the Board's interpretation of section 12 (C) to prohibit any expansion that increases volume in the shoreland setback area contradicts the plain language of section 12 (C) and Title 38 M.R.S.A. section 439-A (4). In response, the Board contends that when sections 12 (C)(1)(a) and 12 (C)(1)(c) conflict, as they do in this case, 12 (C)(1)(c) must control because section 7 of the Ordinance requires the Board to use the more restrictive of the two sections. Additionally, because the term "expanded toward the water," as used in section 12 (C)(1)(c), includes

expansions of volume, the Fielders are prohibited from enclosing the deck because doing so would expand the volume of their house toward the lake.

The Fielders' proposed expansion does not violate any of the applicable provisions of section 12 (C) for several reasons. First, the language of section 12 (C)(1) allows the expansion of a nonconforming structure as long as the expansion does not "increase the nonconformity of the structure." The Maine Guidelines for Municipal Shoreland Zoning Ordinances (the "Guidelines")[1] defines "increase in nonconformity of a structure" as:

> any change in a structure . . . which causes further deviation from the dimensional standard(s) creating the nonconformity such as, but not limited to, reduction in water body . . . setback distance . . . . *Property changes or structure expansions* which either meet the dimensional standard or *which cause no further increase in the linear extent of nonconformance of the existing structure shall not be considered to increase nonconformity.* For example, *there is no increase in nonconformity with the setback requirement for water bodies . . . if the expansion extends no further into the required setback area than does any portion of the existing nonconforming structure.*

06-096 CMR Ch. 1000, § 17 (2001) (emphasis added).

Under the Guidelines, an expansion of less than 30% of volume does not increase the nonconformity of a structure when the structure is not extended toward the water beyond the existing building footprint. The Fielders' proposed expansion will extend no further into the required setback area than the existing deck does now and, hence, will not increase the nonconformity of the structure.

---

1.  "All words in the[] shoreland zoning ordinance provisions shall carry their customary dictionary meanings, unless specifically defined in the Raymond Land Use Ordinance or in the 'State of Maine Guidelines for Municipal Shoreland Zoning Ordinances.'" RAYMOND, ME. SHORELAND ZONING ORDINANCE, § 17 (2000).

The setback for homes in the "Limited Residential/Recreational I District" is one hundred feet for new structures, but the setback is wherever the structure is located for preexisting structures. RAYMOND, ME. SHORELAND ZONING ORDINANCE, § 15 (A)(3)(d) (2000). Setbacks are "the nearest horizontal distance from the normal high-water line to the nearest part of a structure . . . ." 06-096 CMR Ch. 1000, § 17 (2001). The setback, therefore, is a distance; in this case, 37 feet. The 37-foot distance marks the linear boundary beyond which the Fielders may not expand their house. The Fielders' proposed enlargement does not increase the nonconformity with the setback requirement because the enlargement will not extend beyond that 37-foot linear setback boundary. Instead, the expansion involves an increase in the volume of the home which will reach the boundary and extend no further.

Title 38 supports this interpretation as well. The drafters of the Shoreland Zoning Ordinance wrote the Ordinance "in accordance with the provisions of Title 38 Sections 435-449 of the Maine Revised Statutes Annotated (M.R.S.A.)."[2] RAYMOND, ME. SHORELAND ZONING ORDINANCE, § 2 (2000). Title 38 M.R.S.A. section 439-A (4) (2001), regarding setback requirements, states:

> Notwithstanding any provision in a local ordinance to the contrary, all new principal and accessory structures and substantial expansions of such structures within the shoreland zone . . . must meet the water setback requirements approved by the board, except functionally water-dependent uses. For purposes of this subsection, a substantial expansion of a building shall be an expansion which increases either the volume or floor area by 30% or more. This subsection is not intended to

---

2. "Accordance" means "agreement: conformity." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 71 (1988).

> prohibit a municipal board of appeals from granting a variance . . . *nor is it intended to prohibit a less than substantial expansion of a legally existing nonconforming structure, as long as the expansion does not create further nonconformity with the water setback requirement.* (emphasis added).

This statute specifically allows expansions of volume to nonconforming structures, as long as the expansion is not substantial and does not create further nonconformity with the water setback requirement. The statute's limitation on expansions creating further nonconformity *with*, as opposed to *within*, the water setback requirement indicates an intent to prohibit expansion toward the water, but not an intent to prohibit all expansions within the setback.

This interpretation is also consistent with Lewis v. Rockport, 1998 ME 144, 712 A.2d 1047. In Lewis, Maine Coast Artists was granted a special exception to expand and modify its art gallery. Lewis, 1998 ME 144, ¶ 2, 712 A.2d at 1048. Section 505 of the Rockport land ordinance provided that "[u]pon approval of the Zoning Board of Appeals, a nonconforming aspect of a lot, structure or use may be changed such that it is less nonconforming or no more nonconforming than the existing situation." Id. ¶ 4 n. 1. The then-existing building was twenty feet higher than permissible and encroached on the six-foot sideyard setback by less than one foot. Id. ¶ 10, 712 A.2d at 1049. The zoning board reasoned that as long as the addition to the building would not encroach more than the several inches into the sideyard than it already did and it would not be taller than the then-current height, the completed building would be no more nonconforming than the original structure. Id. The Law Court rejected this reasoning, holding that to increase the square footage or volume within a

7

setback area is to increase the nonconformity of the structure. Id. ¶ 13, 712 A.2d at 1050.

Applying that holding to this case, the Board argues that Lewis supports its contention that any modification of or addition to a building that increases the volume of nonconforming space within the building -- even if it would not increase the linear extent of the nonconformance -- does increase the building's nonconformance. Unlike the Rockport ordinance, however, the Raymond Ordinance expressly allows for expansion, including expansion of volume, of nonconforming structures in section 12 (C)(1)(a), as long as the expansion is less than 30% of the total volume of the structure.

Second, section 12 (C)(1)(a) specifically states that "*that portion* of the structure" which is less than the required setback from the high-water line may be expanded in volume as long as it is an expansion of less than 30%. There is no question that the Fielders' proposed enlargement does not exceed this limit.[3] More importantly, however, this section expressly addresses the Board's concerns.[4] Not only can a nonconforming structure be expanded up to 30%, it can only be expanded up to 30% "during the lifetime of the structure." In other words, once a nonconforming structure has been expanded by 30% of its original volume, it cannot be expanded any further during its lifetime.

---

3. Both the Board and the Fielders agree that the proposed expansion is one of volume. The term "expansion," as used in section 12 (C)(1)(c), includes an increase in the floor area or volume of a structure. 06-096 CMR Ch. 1000, § 17 (2001).

4. See page 2.

Third, section 12 (C)(1)(c) prohibits any expansion of a nonconforming structure "toward the water body." The ordinary plain meaning of "toward" is "in the direction of." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1222 (1988). In this case, the question is not whether the Fielders' proposed expansion in volume is in the direction of the water, but from what point does the measurement of "toward the water body" begin. Taken in conjunction with the definitions of "increase in nonconformity" and "setback," the term "toward" must start from the linear setback boundary, not from the structure itself. In this case, the starting point is the 37-foot boundary. The Fielders will not expand "toward" the water unless they extend their home closer to the lake than the 37-foot setback boundary, where the outer perimeter of the deck lies. Because their proposed expansion remains within the 37-foot boundary, the expansion will not violate section 12(C)(1)(c).

The entry is:

The decision of Raymond's Board of Appeals is vacated and the matter is remanded to the Board for further proceedings consistent with this decision.

Dated at Portland, Maine this 4 day of October, 2001

Robert E. Crowley
Justice, Superior Court

9

Date Filed __03-23-10_____ __Cumberland_____ Docket No. __AP-01-16_____ ●

County

Action __Rule 80B/80C Appeal_____

Ernest an Shirley Fielder                    The Town of Raymond
                                             John L. Cooper

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Natalie L. Burns Esq.<br>P.O. Box 4510<br>Portland, Maine 04112 | Geoffrey H. Hole, Esq. (both) 774-1200<br>P.O. Box 9729<br>Portland, ME 04104-5029<br><br>JOAN FORTIN, ESQ. (Both) |

| Date of Entry | |
|---|---|
| March 23 | Received 03-23-01<br>Summary sheet filed.<br>Complaint for Review of Governmental Action filed. |
| Mar. 26 | On 3-26-01.<br>Briefing schedule mailed. Plaintiff's brief due 5-2-01. |
| March 28 | Received 3-28-01.<br>Entry of Appearance of Geoffrey Hole, Esq. on behalf of Defendants. |
| April 2 | Received 4-2-01.<br>Summons filed showing officer's return of service of 3-28-01 upon Defendant John Cooper. |
| "   " | Summons filed showing officer's return of service on 3-28-01 upon Defendant Town of Raymond to Nancy Yates, Town Clerk. |
| May 3 | Received 5-3-01:<br>Plaintiffs Rule 80B Brief filed. |
| "   " | Plaintiffs Rule 80B Record filed. |
| May 29 | Received 5-29-01:<br>Defendants Town of Raymond and John Cooper, Brief Pursuant to Rule 80B filed. |
| June 6 | Received 06-06-01:<br>Plaintiffs' Reply Brief filed. |
| Sept 7 | Received 9-7-01:<br>Entry of appearance on behalf of Defendants by Joan Fortin, Esq., filed. |
| Sept. 10 | On 9-6-01.<br>Oral Argument held.<br>Court takes matter under advisement.<br>Crowley, J. Presiding, Electronic Recording Tape 2036, Index Nos. 6662-7312 and Tape NO. 2045, Index Nos. 0-705, Natalie Burns, Esq. for Plaintiffs and Joan Fortin, Esq. for Defendants. |