RECEIVED & FILED

OCT 17 2002

ANDROSCOGGIN
SUPERIOR COURT

STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-00-028
EAG ─···

THOMAS R. DESJARDINS and
HELEN M. DESJARDINS
            Plaintiffs

v.

**ORDER ON 80B APPEAL**

TOWN OF GREENE and its
CODE ENFORCEMENT OFFICER
            and
MICHAEL POLIQUIN and
STACY LOWELL,
            Defendants

DONALD L. GARBRECHT
LAW LIBRARY

OCT 30 2002

## PROCEDURAL HISTORY

Although he had never applied for a building permit for the installation of a pool on his property in Greene, Michael Poliquin filed a "Variance or Appeal, Request for Hearing," on August 21, 2000, stating that his request for a permit had been denied by the Greene Code Enforcement Officer on August 16, 2000. Attached to the request was the following statement:

> We are requesting for an appeal because we do not feel as though we should be in violation with the land use ordinance. The reason being is when we had purchased our swimming pool back in febuary [sic] we also hired the pool contractor to install it for us when weather permitted. At that time we needed to start planning where we wanted it located so the contractor make his plans. In the mean time [sic] the pool contractor as well as us had checked with the town of greene [sic] for code requirements. They told us that there was no permit required and the side setback was 10 ft. from property line. We then felt as though we were all set to start our plans. Apparently in the mean time the laws of the land use ordinance had changed that we were not aware of. We feel as though we did everything we could have before hand to be within code and did not expect any changes. We are asking if you would please consider granting this appeal for we truly did not intend to be against code regulations.

The Appeals Board apparently held a site visit on October 5, 2000, and then held public hearings on October 12 and October 17, 2000. At the conclusion of the discussion on October 17, 2000, the Board voted to grant the appeal. The Board issued its findings of fact on October 31, 2000.

On November 29, 2000, Thomas and Helen Desjardins filed a Complaint with the Androscoggin County Superior Court requesting that the court review the October 17, 2000 decision of the Greene's Zoning Board of Appeals pursuant to M.R.Civ.P. 80B. That complaint, which had been served upon the Town on November 28, 2000, resulted in the issuance of a Notice and Briefing Schedule dated November 30, 2000.

On December 6, 2000, the Desjardins filed a "revised" complaint. That Complaint included no new allegations or requests for relief, but did add Michael Poliquin and Stacy Lowell to the list of defendants. The revised complaint was served on Poliquin and Lowell on December 7, 2000. There is no record to show it was ever served on the Town. On December 15, 2000, Attorney Gregory Cunningham entered his appearance on behalf of the Town of Greene and its Code Enforcement Officer, David Leeman. Lowell filed a "response" to the revised complaint on December 27, 2000.

Plaintiffs filed their brief with the court on January 12, 2001. Neither the Town nor the abutting landowners filed a brief in response, and the plaintiffs never requested a hearing. On December 3, 2001, the plaintiffs filed a Motion for Default, asserting that neither the Town nor the abutting landowners had responded to their complaint. The Town opposed that motion, and it was soon withdrawn. Again, no hearing was requested.

Oral argument was heard on September 30, 2002. Attorney Richard Lord appeared on behalf of the plaintiffs. Attorney Cunningham appeared on behalf of the

Town. Poliquin and Lowell were present, pro se. The findings and conclusions below were made after a review of the record, pertinent case law, and the parties' arguments.

FINDINGS OF FACTS AND CONCLUSIONS OF LAW

Thomas and Helen Desjardins and Michael Poliquin and Stacy Lowell own abutting parcels of land in Greene, Maine. On March 4, 2000, the citizens of Greene adopted a Land Use Ordinance. §3-101.2 of the Ordinance established a 25' side setback for single lots, and §4-101.1(A) required that a building permit be obtained before any swimming pool exceeding 100 square feet in area be constructed.

In May 2000, Poliquin and Lowell built a swimming pool larger than 100 square feet on their property without a permit to do so, and within the 25' setback. On June 1, 2000, the Desjardins filed a complaint with the Town of Greene. In their statement, they alleged that the pool built by their neighbors was within eleven feet of the property line. The Town CEO visited the site on June 1, 2000.[1] He has asserted that he told Poliquin and Lowell that they needed to obtain a permit during that visit. That conversation could be deemed oral notice, pursuant to §4-201.1(B)(1), of the violation and the necessary corrections. Poliquin and Lowell recall the events differently. Poliquin stated that, during the visit on June 1, Leeman told them that the pool's location was fine, and that they merely needed to obtain a permit for an accessory structure.

The following day, the Town Manager, Judy Biggar, sent a letter to Poliquin and Lowell, informing them that she understood they had built a pool, without a building

---

[1] David Leeman, the Town's CEO, stated during the October 12, 2000 hearing that he had visited the site at least twice during the construction process. Lowell and Poliquin maintain that he never came to their property before June 1. If Leeman's statement is accepted as accurate, he twice saw that a pool was being built without a permit, and within the 25' setback, yet he took no action.

permit, and within the setback requirements. She requested that they contact her "about this matter."

Despite these two notices, neither Poliquin nor Lowell filed an application for a building permit.

In a letter dated June 13, 2000, Leeman told Poliquin and Lowell that the pool they built was in violation of the Ordinance. Despite knowing that the pool had already been completed, he ordered Poliquin and Lowell to cease construction and apply for a valid permit. Although flawed, that letter would have complied with the requirements of §4-201.1(B)(2) if it had been sent within twenty-four hours of the oral notice or stop work order mentioned above. The letter was not even written for nearly two weeks, and then was not mailed until nearly one month later.

Proof of the date of service of this First Notice was not included in the record created by the appellants. However, both Poliquin and Lowell acknowledged during the October 12, 2000 hearing that they received that letter. (10-12-00 hearing, p. 4) Ms. Lowell recalled "signing for" the notice. (10-12-00 hearing, p. 6). Poliquin told the Board that he called Leeman the same day he received the letter. During that conversation, Leeman told Poliquin that he had made a mistake, and that the pool would have to be removed.

Poliquin and Lowell did not remove the pool as ordered. In a letter dated August 4, 2000, Attorney Cunningham notified Poliquin and Lowell that the Board of Selectmen intended to pursue legal action against them unless they applied for a valid building permit.

Neither Poliquin nor Lowell has ever applied for a building permit. During the hearing on October 12, 2000, Poliquin stated that they were "in the process" of filling out the application when they received Leeman's June 13, 2000 letter. When asked why

they had not sought a permit after receiving that letter, Lowell told the Board that the CEO had told them their only option was to tear down the pool. The letter itself, however, told Poliquin and Lowell to apply for a permit. It also provided a citation of the Ordinance section that permitted them to appeal his decision.

During the hearing on October 12, 2000, Lowell stated that she had spoken to an unidentified woman at the town office in January or February to find out what she needed to do before installing her pool. This unidentified woman informed her that it had to be ten feet back from the property line. A permit was not discussed during that conversation. Lowell also stated that she attempted to speak with Leeman after they started getting letters about the pool, but that he had failed to return numerous calls.

The pool contractor, Mr. Pinette, acknowledged that he had not installed another pool in Greene, and was not familiar with its Ordinance. Like Ms. Lowell, he called Town Office in February, and another unidentified woman at the town office told him that no permit was necessary. After the pool had already been finished, Mr. Pinette went to the town office to acquire a copy of the Ordinance. At that time, the Town Manager told him directly that a permit was not needed.

DISCUSSION

When the decision of a government body comes under review pursuant to a Rule 80B Appeal, the Superior Court must independently examine the record and review the decision for abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. The interpretation of a zoning ordinance is a question of law to be determined by the court. *Lewis v. Town of Rockport*, 1998 ME 144, ¶ 11, 712 A.2d 1047, 1049. The court must give effect to the legislative history of the statute, consider the plain

language, and construe its "terms or expressions . . . reasonably with regard to both the object sought to be obtained and to the general structure of the ordinance as a whole." *Oliver v. City of Rockland*, 1998 ME 88, ¶ 8, 710 A.2d 905, 908.

1.Timeliness

### A. Desjardins' appeal to this court

The court may not consider any issue on appeal before first addressing whether the appeal is timely filed. Pursuant to Greene's Ordinance, an appeal must be taken "within 45 days from the date of [sic] the decision is rendered." §8-101.2(C). The Law Court has held that the period for appeal begins to run on the date of the public vote by the Board, even when the Ordinance requires written findings and conclusions. *Woodward v. Town of Newfield*, 634 A.2d 1315 (Me. 1993) The Greene Ordinance, by comparison, does not require the Board to issue written findings and conclusions, although it does require the Board to inform the appellant, the Planning Board, CEO and Selectmen of its decision, in writing, within 30 days. §8-101.3(B)(4)

The date of the Board's decision was October 17, 2000. The Desjardins had until December 1, 2000 to file their appeal. The amended complaint relates back to the date the original Complaint was filed, pursuant to M.R.Civ.P. 15(c). The original complaint filed by the Desjardins was timely filed and therefore, the court may entertain the complaint.

### B. Poliquin's appeal to Board of Appeals

Greene's Ordinance created a Board of Appeals with jurisdiction to process appeals in accordance with 30-A M.R.S.A. § 4353. §8-101.2 of the Ordinance explains that the Board has jurisdiction over administrative appeals, defined as "alleged errors in procedures by the building inspector, code enforcement officer or planning board," and variance appeals, "where a relaxation of this Ordinance would not be contrary to the

6

public interest." For either type of review, the appeal must be filed with the Town Clerk not more than thirty days after the date of the decision being appealed. Ordinance § 8.101.3(A).

During its deliberation, the Board must first determine whether an appeal has been timely filed. The decision appealed by Poliquin and Lowell was made either on June 1, 2000, when Leeman told them they had to get a permit, or on June 13, 2000, when he wrote the First Notice. As was mentioned above, Poliquin filed his appeal on August 21, 2000. A close reading of the minutes from the October 17, 2000 hearing reveals the Board's finding that the appeal was not timely. At that second hearing, Chairman Kippax asked if the Board should even consider the appeal, since it was "filed after the time limits set forth by the Ordinance (§8-101.3)." The response was that, by "going to this point," the Board had waived the timeliness requirement. Unfortunately, this conclusion reflects both an error of law and an abuse of discretion. The Board cannot simply waive a time limit imposed by the Ordinance because it has spent some time reviewing the case.

2. Notice

Upon receipt of a timely appeal, the Board is required to schedule a public hearing, and then provide written notice of the hearing to abutting property owners, by certified mail, at least twenty days before the hearing. Ordinance § 8.101.3(B)(3). The Desjardins claim that no such notice was provided in this case. However, the Town's appeal file, which was not made part of the record here, apparently contains a return receipt from just such a notice. The Desjardins did learn of the hearing and were present on October 12, 2000. Based on the Record provided, the court finds that the Town did comply with the notice provisions of its Ordinance.

7

3. Equitable estoppel

As mentioned above, the Board of Appeals is the administrative body charged with hearing and deciding "alleged errors in procedures by the . . . Code Enforcement Officer or Planning Board in the administration or enforcement of this Ordinance." Ordinance § 8-101.2(A). The myriad errors committed by the CEO might have provided grounds for review if they had occurred before the pool was built, and before Poliquin had requested and been denied a building permit, but only if the appeal from that denial had been timely filed. Here, however, there was no application, the CEO's errors occurred after the pool had been completed, and the appeal was not filed in a timely fashion.

Poliquin and Lowell built this pool without a permit, and within the 25' setback. They apparently did so in reliance on the opinion of some unidentified employee of the Town Office. Relying on the oral unauthorized representations of a municipal employee, i.e., anyone other than the CEO, that a written building permit is not required, is simply not reasonable, particularly in light of the unambiguous language of the Ordinance. *F.S. Plummer Co. v. Cape Elizabeth*, 612 A.2d 856, 861 (Me. 1992). Persons who wish to build a pool in Greene cannot be allowed to hide behind the lack of expertise among the municipality's office staff.

The actions and statements of a CEO, unlike those of the unnamed member of the office staff, might give rise to a cognizable claim of equitable estoppel. The Board's findings that the Town had committed significant errors in the enforcement of the Ordinance, and that it had failed to provide clear instructions in how to remedy a violation are both supported by the evidence in the record.[2] The CEO failed to provide

_____

[2]    If Leeman is still the CEO for the Town, the court strongly urges the Town to provide him with training in the appropriate enforcement of its Ordinance.

8

a first notice of violation within 24 hours, as required by §4-201.1(B)(2). He did tell them they had a right to appeal his decision, but may have ignored their requests for further assistance.

Although equitable estoppel may be applied to the activities of a municipal official, it may only be based upon a "factual determination that the declarations or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment and what he would not otherwise have done." *Shackford v. Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 103-104 (Me. 1984). In this case, the pool was built before Leeman took any action whatsoever. Poliquin and Lowell did not build their pool without a permit and within the setback as a result of something Leeman told them. All of his errors occurred after the pool had been completed and might, at best, have provided the Board with a rationale for imposing either minimal fines or no fines at all. Therefore, the Board erred, as a matter of law, when it concluded that Leeman's errors could allow it to ignore the clear language of the Ordinance.

The Board also discussed the lateness of the CEO's notice. Immediate notice of a violation allows the landowner to stop a project before its completion, providing an opportunity for correction without demolition. Here, however, the pool was complete by June 1. The delay did not result in an additional outlay of time or money by Poliquin or Lowell. The Board correctly noted that the CEO had failed to provide a second notice of violation. Poliquin and Lowell received the First Notice from Leeman, and the second notice from the Town's attorney. Again, the point of the second notice is to allow the violators a final opportunity to correct the problem without resort to legal proceedings. Attorney Cunningham's letter told Lowell and Poliquin that the Board of Selectmen intended to pursue legal action against them unless they applied for a valid building

permit. They still failed or refused to do so and, based upon the Board's own finding, failed to make a timely appeal of the CEO's order to the Board of Appeals.

Finally, in its October 31, 2000 decision, the Board determined that Poliquin and Lowell made good faith attempts to find out if a building permit was required. The Record simply does not support this finding. Poliquin and Lowell never bothered to read the Ordinance. They relied upon out-of-date information given to them by someone other than the CEO in February, although they did not begin construction until May. Town Meetings are well advertised and open to all citizens. Their decision to ignore the Town Meeting and the Ordinance adopted by the Town's citizens during that meeting cannot be used to shield them from the application of the Ordinance.

## ORDER

For the reasons stated above, the court finds that the August 21, 2000 appeal to the Board was not timely. The court further finds that the Board's decision must be vacated because it is based upon abuses of discretion, errors of law, and findings unsupported by substantial evidence in the record.

Plaintiffs' appeal upheld. Pool shall be removed within thirty (30) days.

The clerk is instructed to incorporate this order by reference in the docket for this case.

DATED: **October 17, 2002**

_____
Ellen A. Gorman
Justice, Maine Superior Court

10

Date Filed __November 29, 2000__ __ANDROSCOGGIN__ Docket No. __AP-00-28__
County

Action __80B APPEAL__

THOMAS R. DESJARDINS and
HELEN M. DESJARDINS
Greene, Maine

CODES ENFORCEMENT OFFICER FOR THE
TOWN OF GREENE and
THE TOWN OF GREENE
     and           (amended 12-6-00)
MICHAEL POLIQUIN and STACY LOWELL
Greene, Maine

vs.

| Plaintiff's Attorney | Defendant's Attorney     (TOG Code Enf. |
|---|---|
| Richard A. Lord, Esq.    BAR #664<br>52 Maine Street<br>Brunswick, ME 04011 | Gregory M. Cunningham, Esq.  Officer)<br>BERNSTEIN, SHUR, SAWYER & NELSON  BAR #771<br>100 Middle St., P.O. Box 9729<br>Portland, ME. 04104-5029<br><br>Michael Poliquin and Stacy Lowell (Pro Se<br>238 Sullivan Road    (12-27-00)<br>Greene, ME. 04236 |

| Date of Entry | |
|---|---|
| 2000<br>Nov. 30: | Received 11-29-00.<br>Summary sheet filed. (signed by Plaintiff)<br>Filing fee paid. ($120.00) Rec. #11-29-00 #5<br>Complaint Under M.R.C.P. 80B, filed.<br>Summons filed showing officer's return of service on 11-28-00 upon defendants<br>through Ronald Grant, Head Selectman. |
| "   " | Received 11-30-00.<br>Summary sheet, filed. (signed by Attorney Lord) |
| "   " | On 11-30-00.<br>Notice and Briefing Schedule 80B Appeal of Governmental Action mailed<br>Richard A. Lord, Esq., Codes Enforcement officer c/o Town Manager, Town of<br>Greene and Town of Greene, c/o Town Manager on 11-30-00.<br>(Plaintiff's Brief is due on before January 8, 2001.) |
| Dec. 7: | Received 12-6-00.<br>Amended Complaint under M.R.C.P. 80B, filed. |
| Dec. 18: | Received 12-15-00.<br>Defendants Codes Enforcement Officer for Town of Greene and Town of Greene,<br>Appearance, filed.<br>Gregory M. Cunningham, Esq. appears on behalf of Codes Enforcemnt Officer an<br>Town of Greene. |
| Dec. 21: | Received 12-21-00.<br>Summonses (2) filed showing officer's returns of service on 12-7-00 upon<br>Defendants Michael Poliquin and Stacy Lowell |
| "   " | On 12-21-00.<br>Copy of Notice and Briefing Schedule 80B Appeal of Governmental Action mailed<br>Michael Poliquin and Stacy Lowell, 238 Sullivan Road, Greene, ME. 04236 on<br>12-21-00. |