**Jonathan S. SHAFMASTER, et al.**

v.

**TOWN OF KITTERY, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 6, 1983.

Decided Jan. 9, 1984.

Bernstein, Shur, Sawyer, & Nelson, John M.R. Paterson (orally), Andrew J. Bernstein, Portland, for plaintiffs.

McEachern & Thornhill, Duncan A. McEachern (orally), Kittery, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

PER CURIAM.

Jonathan Shafmaster, Leather Loft, Inc., and Import Products, Inc. (hereinafter Shafmaster) appeal from an injunction is-

sued on the counterclaim of the defendants, the Town of Kittery, the Kittery Town Council, and the Code Enforcement Officer (hereinafter Town). Shafmaster raises a variety of issues relating to the administrative procedures of the Town, the scope of judicial review and the nature of his estoppel claim against the Town. Because we determine that the parties, as well as the Superior Court, have misinterpreted the Kittery Zoning Ordinance, we do not reach the merits of Shafmaster's claims. We do, however, vacate the judgment and remand to Superior Court for further proceedings.

Shafmaster leased commercial property on Route 1 in Kittery in May, 1981. While operating a retail store on the site, he began planning to build a shopping mall. In October, 1981, Shafmaster's agent, Edward Huminick, discussed the zoning requirements with the Kittery Code Enforcement Officer. In November, Huminick walked the site with three members of the Kittery Planning Board.

Huminick then began formal application procedures to obtain Planning Board approval for the development. A total of three hearings were held at which Huminick presented the plans for the development. After the final hearing on April 8, 1982, the Board issued its letter of approval. Shafmaster went ahead with his development. The Code Enforcement Officer issued a building permit in September, 1982. The land was purchased. Excavation for the building began in November, 1982.

On November 1, 1982, a new Kittery Code Enforcement Officer took up her duties. She visited Shafmaster's site in early December, and several times thereafter until January 14, 1983. On that day, she sent a certified letter to Huminick informing him that the building under construc-tion violated the Shoreland Area Protection requirement of the Zoning Ordinance that no structure be located within 100 feet of a salt water body. The letter also informed Huminick that the building permit was revoked.

Shafmaster filed this action seeking direct judicial review of the Code Enforcement Officer's action.[1] He asserted, *inter alia,* that the Town should be estopped from revoking the permit and enjoined from enforcement of the revocation. The Town counterclaimed, asking the Superior Court to order removal of the portions of Shafmaster's building in violation of the Zoning Ordinance.

A non-jury trial was held on April 11, 1983. The Town called as a witness one member of the Planning Board who had visited the site with Huminick in November, 1981. Relying on this Board member's testimony and rejecting Huminick's, the Superior Court justice found that Huminick had deceived the Planning Board. Specifically, he found that Huminick had intentionally failed to inform the Planning Board that Chickering Creek, located within 100 feet of the building, was a salt water creek. The justice found that if the Planning Board had known of the salt water nature of the creek, it would not have issued its approval. Because of its finding of bad faith, the Superior Court denied Shafmaster and granted the Town equitable relief.

The parties herein, as well as the Superior Court, labored under two basic misunderstandings of the Kittery Zoning Ordinance. Pertinent to the first misunderstanding, the court's finding of bad faith was based on the testimony of a Planning Board member that he had been misled by Huminick during the on-site inspection. However, under the Kittery Zoning Ordi-

---

1. Shafmaster also filed an appeal and a request for a variance with the Kittery Zoning Board of Appeals. We do not discuss whether Shafmaster should have been required to exhaust his administrative remedies in that body as in *Gagne v. Lewiston Crushed Stone Company,* 367 A.2d 613 (Me.1976). A preliminary ruling and later conclusion of law by the Superior Court that Shafmaster need not pursue his administrative remedies has not been challenged on appeal. Consequently, the critical question of the adequacy of the administrative remedy has not been briefed or argued. We decline to address the question under such circumstances and intimate no opinion thereon.

nance, Shafmaster's development did not even require Planning Board approval. Even if that approval were required, such approval does not relieve the Code Enforcement Officer from his or her independent responsibility. Therefore, testimony concerning any alleged deception of the Planning Board should not assume the importance attached to it by the trial court.

The Kittery Zoning Ordinance requires Planning Board approval prior to obtaining a building permit

> when any development . . . is proposed in which the total contiguous area is:
>> a) equivalent to, or greater than, three times the minimum lot size for that zone, or
>> b) the total contiguous area is 60,000 square feet or more and located in a business or industrial zone.

Kittery, Me., Land Use and Development Code Zoning Ordinance, Chap. I, Section IV. E. (1977).

Under either criteria, the Shafmaster development is not large enough to require Planning Board approval. The site is 1.22 acres or approximately 53,000 square feet. Thus, subsection b) is not applicable.[2] The minimum lot size for the zone in which the site is located is 40,000 square feet.[3] The development would have to be at least 120,-000 square feet to require Planning Board approval under subsection a).

The issuance of a building permit is a responsibility of the Code Enforcement Officer. The Zoning Ordinance states:

> It shall be the duty of the Code Enforcement Officer . . . to enforce the provisions of this Code. . . . No building or other structure shall be erected . . . without a permit therefor, issued by the Code Enforcement Officer. No building per-

mit shall be issued except in conformity with the provisions of this Code.

Kittery, Me., Land Use and Development Code Zoning Ordinance, Chap. I, Section IV (1977). There is no indication that the granting of Planning Board approval relieves the Code Enforcement Officer of his or her responsibility to ensure conformity with zoning requirements.

The second, and perhaps more important, misunderstanding concerns the nature of the setback requirement in the zone or zones in which Shafmaster's development is located. The source of the misunderstanding may be the confusing manner in which overlapping zones are described and the variety of different setback requirements within the Zoning Ordinance.

Chapter I of the Zoning Ordinance, entitled Zoning Regulations, establishes and describes various zones in the town. The Chapter also specifies that the locations of these zones are established by the "Zoning Map of the Town of Kittery." Among its other provisions, Chapter I establishes a Resource Protection zone. On the Zoning Map, the Resource Protection zone is shown as a black band or area around major coves and creeks. As scaled on the Map, the black band around Chickering Cove is 100 feet wide thereby indicating that the Resource Protection zone boundary is 100 feet from Chickering Cove. As shown on the Map, the Resource Protection zone is a separate and distinct zone. With limited exceptions, no structures are permitted within this zone. Thus, the effect of the Resource Protection zone is to prohibit structures within 100 feet of Chickering Cove.

Chapter II of the Zoning Ordinance, entitled Performance Standards, includes in its

---

**2.** Although the Ordinance provides for "industrial," "local business," and "commercial" zones, there is no similar provision for a "business" zone. We assume "business" is a generic term referring to either the "local business" or "commercial" zones. As discussed, *infra,* the Shafmaster development is located in the "commercial" zone.

**3.** Although there was considerable dispute as to whether the site was located in the Commercial zone or the Resource Protection zone, the minimum lot size requirements are the same. The Resource Protection zone standards state that the minimum lot size shall be the same as in the adjacent zone. The minimum lot size in the adjacent Commercial zone is 40,000 square feet.

Section I, Environmental, a provision for Shoreland Area Protection, subsection I. Under that provision, the Zoning Ordinance defines shoreland areas as those areas "within 250 feet of the normal high water mark of *any . . . salt water body*" (emphasis added). The Shoreland Area Protection provision then prohibits the construction of any principal building "within 100 feet of the high water mark or edge of shoreline."[4] Further, the specified shoreland areas "intentially [sic] embrace and overlay parts of other Kittery Zoning Districts." Thus, the Shoreland Area Protection provision extends a setback requirement to all zones.

Finally, we note the similarity in the setback requirements for each zone. In the Rural Residence, Suburban Residence, Urban Residence, Rural Conservation, Local Business, and Commercial, there is a 100′ setback required from "streams, water bodies and wetlands." The Resource Protection zone standards require a 100′ setback from "normal high water."[5] There is no setback requirement in the Industrial zone which is co-extensive with the Portsmouth Naval Shipyard and owned by the federal government.

The parties are now aware that the Shafmaster development is in violation of the Commercial zone setback requirement as well as the Shoreland Area Protection setback requirement (both of which are 100 feet at the Shafmaster site). However, at trial, the parties' primary factual dispute focused on whether the Planning Board knew of the salt water nature of the creek. Both the parties and the court treated that factor as decisive of whether the development violated the Zoning Ordinance. The issue becomes important, therefore, in view of the significance the court placed upon the failure of Huminick to inform the Planning Board of the salt water nature of Chickering Creek.

The court erroneously concluded that the Resource Protection zone consists of "the 100 foot wide inner border of the 250 foot wide Shoreland Area Protection Zone. . . ." The court thought that the setback requirement in the Shoreland Area Protection provision (Chapter II) was the Resource Protection zone (Chapter I). In fact, they are separate provisions of the Zoning Ordinance. The court also found that the Map could not define the Resource Protection zone because Chickering Creek was not on the Map and the Map was therefore in error. Contrary to this finding, the Creek is shown on the Zoning Map. Much of the Creek is, in fact, outside the Resource Protection zone which abuts Chickering Cove. The court's misinterpretation of the Zoning Ordinance and Map led it to reject as unworthy of belief Huminick's testimony that he and the Code Enforcement Officer scaled the Zoning Map to determine whether Shafmaster's property was in the Resource Protection zone.

Confusion of the Resource Protection zone with the Shoreland Area Protection provision apparently caused the parties to focus on the salt water nature of the creek. The court clearly believed that the development would be in violation of the Zoning Ordinance only if located within 100 feet of a salt water body. The court was thus misled into accepting as the explanation for the Planning Board's approval that the Board "never was told and never knew that Chickering Creek is a salt water creek." Having already rejected Huminick's explanation of his actions and attributing to him knowledge of the significance of the salt water nature of the creek, the court logically concluded that his omission was intentionally deceptive and in bad faith.

In our view of the record, these mistakes in interpretation and application of the Zoning Ordinance remove critical support from the court's finding of bad faith,

4. It is this section of the Zoning Ordinance that the Code Enforcement Officer cited in her January 14th letter as being violated by the Shafmaster development.

5. This setback requirement appears to be redundant because no structures are permitted within the Resource Protection zone.

in spite of the fact that they do not cure the zoning violations. We conclude, therefore, that we must vacate the judgment and remand the case to the Superior Court for a new trial wherein the parties may be guided by a clearer understanding of the distinction between the Resource Protection zone and the Shoreland Area Protection provision.[6]

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

6. We leave to the Superior Court the questions of the nature and duration of any interim relief deemed necessary to protect the interests of the parties following issue of the mandate herein. In view of the necessity to relitigate the issues herein, we suggest that any further proceedings be held before a different justice.