STATE OF MAINE                                           SUPERIOR COURT
                                                            CIVIL ACTION
YORK, ss.                                              DOCKET NO. AP-07-047

JONATHAN SHAFMASTER,

              Plaintiff

       v.                                              **JUDGMENT**

TOWN OF KITTERY, et al.,

              Defendants

       This case comes before the Court on Plaintiff Jonathan Shafmaster's M.R.Civ.P. 80B

Appeal from Defendant Town of Kittery Zoning Board of Appeals' (ZBA) decision to deny

Defendant's appeal.  Following hearing, the appeal is Denied.

## BACKGROUND

       Because the basis of the ZBA's decision relies on past litigation involving the property, it

is important to briefly review that litigation history. The property at issue here is located at 284

U.S. Route 1 in the commercial district in Kittery, and abuts a saltwater body named Chickering

Creek.  It is subject to the Kittery Land Use and Development Code Zoning Ordinance's (the

"Ordinance") requirement that no structure on the property be located within 100 feet of the

creek.

       In 1981, Mr. Shafmaster applied to the Kittery Planning Board (the "Board") to construct

a commercial shopping mall on his property.[1] After reviewing the plan, the Board approved of

the placement of the building on the land, and in September 1982, a building permit was issued

and construction began.

---

[1]    At that time, three parties were involved with the property: Mr. Shafmaster, Import Products, Inc., and
Leather Loft, Inc.

In November 1982, the Code Enforcement Officer (the "CEO") discovered that, in violation of the Ordinance, the rear portion of the building's foundation was being built within the 100-foot setback requirement. Thereafter, the CEO revoked Mr. Shafmaster's building permit, and litigation ensued in Superior Court.

After a trial on the merits, the Superior Court, finding that the Mr. Shafmaster (and his co-defendants) "jointly and severally willfully violated the Costal Wetland Law," ordered them to remove the part of the building that was within 100 feet of the shoreline. Mr. Shafmaster appealed to the Law Court.[2] The Law Court held that the lower court had misinterpreted certain Ordinance provisions and that this misinterpretation may have affected the court's finding of bad faith, which in turn might also affect the court's "tear down" remedy. The Law Court noted, however, that this misinterpretation did "not cure the zoning violation." Shafmaster v. Town of Kittery, 469 A.2d 848, 851-852 (Me. 1984). The Law Court remanded the case for a new trial.

On remand, the Superior Court again found that Mr. Shafmaster violated the setback provision of the Ordinance and he acted in bad faith. However, the Court decided not to impose injunctive relief (i.e. ordering that the offending parts of the building be town down), because the Town had "made some errors which helped to perpetuate the problem."[3] The Court ordered Mr. Shafmaster to pay a one-time fine rather than having the Town periodically return to court to collect fines for the building's "perpetual violation of the ordinance as when permanent nuisance results in recovery of prospective damages."[4]

In 1990, Mr. Shafmaster applied and received approval to add approximately 11,000 square feet of commercial space to the property. This addition was totally contained outside of the 100-foot setback requirement. According to the July 12, 1990 minutes, Mr. Wilson, a board member, stated that he believed, based on the prior litigation concerning the land and building,

---

[2] Shafmaster, et al. v. Town of Kittery, et al., 469 A.2d 848 (Me. 1984).

[3] Record: Tab D, Page 4.

[4] Record: Tab D, Page 4.

2

that "as long as everything conformed [to the ordinance], then the building could be added to and the lot could be added to."[5] Since this 1990 addition to the building, other modification have been approved by the Board, but all modifications fell outside of the 100-foot setback requirement.

On or about June 15, 2007, Mr. Shafmaster applied to the CEO for a permit to allow a minor modification to his property site plan. The proposed modification of the site plan includes the following:

> Renovations to the Maine Gate Outlet for facade enhancements and retail renovation area (suite 4) as per attached plans A1, A2, & A3 dated 6/13/07. Dimensions of renovation area are 50'W x 44'D. Roof height will not exceed 40' and will match existing ridge line and slope. Restrooms will be included if suit 4 remains separate tenant suit and eliminated if suite 4 is combined with an adjacent suit. 2287sf of existing lofts will be removed when the retail renovation area is completed. Net sf area gain/(loss) for project (67sf). All work to meet applicable codes.

On July 20, 2007, the CEO sent a letter to Mr. Shafmaster denying the permit application because the plot plan showed that the construction would occur within the 100-foot setback zone. Shortly thereafter, Ms. Shafmaster appealed this decision to the ZBA. When an initial hearing was held on August 28, 2007, there was clear confusion as to the status of the land.[6] At this hearing, Mr. Shafmaster's counsel argued that the prior decisions rendered the land "nonconforming." The matter was continued so that the ZBA could get the opinion of the town counsel as to how the previous litigation involving the property affected its status. On September 25, 2007, after receiving the opinion of the town's lawyer on the issue of the property's status, and after allowing Mr. Shafmaster to address the board, the ZBA ultimately denied Mr.

---

[5]   Record: Tab F, ¶ 54.

[6]   Record: Tab Y, page 2. One member questioned whether the Law Court, and subsequent Superior Court decision rendered Mr. Shafmaster's land "nonconforming," or whether it simply made the land in "perpetual violation."

3

Shafmaster's application because "the structure is not a legal nonconforming building per Town Codes, in order to grant an appeal for expansion, it has to be a legal nonconforming building."[7]

## DISCUSSION

As an intermediate appellate court, the Superior Court reviews the decisions of the Board of Appeals "directly for abuse of discretion, legal error, or findings unsupported by substantial evidence in the record." Rowe v. City of S. Portland, 1999 ME 81, ¶ 5, 730 A.2d 673, 675 (*citing* Twigg v. Town of Kennebunk, 662 A.2d 914, 916 (Me. 1995)). "Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion." Forbes v. Town of Sw. Harbor, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a different result. Twigg, 662 A.2d at 916. The Court must not substitute its judgment for that of a board on factual issues. *Id.*

The interpretation of an ordinance, however, is a question of law that is reviewed de novo. Kurlanski v. Portland Yacht Club, 2001 ME 147, ¶ 9, 782 A.2d 783, 786 (*citing* Rockland Plaza Realty Corp. v. City of Rockland, 2001 ME 81, ¶ 7, 772 A.2d 256, 259). That interpretation is guided by the "ordinances specific object and its general structure." Id. (*quoting* Lewis v. Town of Rockport, 1998 ME 144, ¶ 11, 712 A.2d 1047, 1049). An ordinance is construed to "avoid absurd, illogical or inconsistent results." Id. (*quoting* Wright v. Town of Kennebunkport, 1998 ME 185, ¶ 5, 715 A.2d 162, 164).

### I. Is Mr. Shafmaster's building a legally existing nonconforming building?

Mr. Shafmaster argues that the ZBA, in not following certain procedures as outlined in the Ordinance, violated his due process rights. In response, the Town asserts that because Mr. Shafmaster's building is not "nonconforming" under the Ordinance, but rather, is in perpetual

---

[7]      Record: Tab AA, page 3.

violation, the ZBA was without authority to approve his application.[8] This issue involves an interpretation of the Ordinance, and whether or not the building should be considered "nonconforming".

A nonconforming building is defined by the Ordinance as:

> A building that does not meet any one or more of the following dimensional requirements: setbacks, height, and lot coverage. It is allowed solely because it was in lawful existence on July 13, 1977; or it is the result of legally authorized development created between July 13, 1977 and April 26, 1990 and became nonconforming as a direct result of the implementation of this title." Kittery, ME., Code §16.08.020.

It is undisputed that portions of the building currently do not meet the Ordinance's setback requirements and that the building was built after July 13, 1977. Thus, the building can be considered "nonconforming" only if it was built as a result of a legally authorized development.

When the prior litigation finally ended on April 28, 1984, the Court concluded that the building was in "perpetual violation" of the Ordinance's setback requirements.

Therefore, the portion of the building that violates the setback requirements may not be considered "nonconforming." The offending parts of the building were never part of a "legally authorized development," but rather, were found to be in perpetual violation of the ordinance.

However, Mr. Shafmaster points to the fact that the Town, in approving an extension of his building in 1990, and several minor modifications throughout the years, has referred to the property as "an approved site plan," "a previously approved site plan," or as "an approved development plan." Based on these approvals, the language used to make these approvals, and the "current status of the lot," Mr. Shafmaster argues that the Town has never treated the building as being in violation of the setback requirement. Mr. Shafmaster points specifically to

---

[8] The Town supports this argument with a reference to Ordinance § 16.16.50(B), which states, "An application for a 'building/regulated activity' permit, certificate of occupancy permit, sign permit, subdivision approval or development review approval must be denied for any property where a violation exists until such violation has been corrected or resolved." (Emphasis added).

the record of the Board's July 12, 1990 meeting, where a board member states that the town attorney informed him that the building should not be "called an illegally nonconforming building, and, in a sense, [the building] was given some legitimacy by the [prior] Court action."[9]

However, the 1990 extension, and the other subsequent minor modifications throughout the years, have always occurred outside of the 100-foot setback requirement. While the prior court decisions may have given some legitimacy to the building, they have consistently held that those portions that were in violation of the Ordinance 100-foot setback were "in perpetual violation."

Because Ordinance §16.16.50(B) requires the ZBA to deny any building permit on a property where a violation exists, and the building at issue here has elements that are in perpetual violation, the ZBA was without authority to do anything other than deny Ms. Shafmaster's application to extend those portions of the building that are within the 100-foot setback.

## II. Did the Board's Review Violate Mr. Shafmaster's Due Process Rights

Mr. Shafmaster makes several arguments alleging that the ZBA violated his due process rights. He argues that because the ZBA did not follow § 16.24.0505 Appeal Procedures as outlined in the Ordinance, that the ZBA's decision to deny his appeal was arbitrary. Mr. Shafmaster agues that "when a board acts without standard, or without adhering to the standards that are present, the board engages in ad hoc and potentially arbitrary zoning. See Barnard v. Zoning Board of Appeals of Yarmouth, 313 A.2d 741, 748 (Me. 1974).

However, because the ZBA came to the conclusion that Mr. Shafmaster's building was in perpetual violation of the Ordinance, rather than being simply nonconforming, it correctly denied his appeal. As the Town argues, "the payment of the fine for illegal activity . . . did not buy the privilege of subsequent intensification of the violation to the wetlands setback restrictions."[10]

---

[9]     Record: Tab 5, page 10, ¶ 54.
[10]    Defendants' Reply Brief, page 15.

## III. **Was the ZBA able to review this matter?**

Mr. Shafmaster's final argument is that because his proposed expansion will actually decrease the size of the commercial building, his application was not properly before the ZBA. To support this argument, Mr. Shafmaster points to Ordinance § 16.28.260, which states:

> Applications must be submitted for public hearing and site review on development of land and water areas within the municipal boundaries, except: . . . (B) expansion of existing use where the expanded use will require fewer than six additional parking spaces.

As Mr. Shafmaster's proposed expansion will not add six or more parking spaces to his property, he argues that his application should have been reviewed by the "Planning Staff" (i.e. Planning and/or Code Departments).

However, this argument fails to take into account the procedural posture of the case. This is an appeal from the ZBA's decision to uphold the CEO's decision to deny Mr. Shafmaster a building permit. As such, the issue here is whether or not the ZBA properly denied Mr. Shafmaster's appeal. I conclude it did.

The entry will be as follows:

The decision of the ZBA to deny Mr. Shafmaster's appeal is affirmed.

Dated:   September 17, 2008

G. Arthur Brennan
Justice, Superior Court

7