1998 ME 185

**Donna HOLDEN et al.**

v.

**Frederick WEINSCHENK et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 15, 1998.
Decided July 24, 1998.

David J. Perkins, Pamela J. Smith, Perkins & Perkins, P.A., Portland, for plaintiffs.

Marshall J. Tinkle, Tompkins, Clough, Hirshon & Langer, P.A., Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, and DANA, JJ.

DANA, Justice.

[¶ 1] Third-party defendants Frederick and Amy Weinschenk appeal from the summary judgment entered in the Superior Court (Cumberland County, Cole, J.) finding them responsible for the real estate commission owed on the sale of their residence to third-party plaintiffs Donna and Jeff Holden. The Weinschenks contend the court exceeded its discretionary authority when it denied them an opportunity to amend their pleadings and, in any event, they have raised genuine issues of material fact so as to preclude the entry of a summary judgment. We disagree and affirm the judgment.

## I.

[¶ 2] On November 26, 1995, the Holdens entered into an exclusive buyer agreement with Paul Deshaies, a real estate broker with Properties By The Sea, that provided they would pay the realtor six percent of the purchase price of any property they contracted to purchase before May 26, 1996. On the same day, Donna Holden also signed an exclusive right to sell listing agreement with Properties By The Sea for the sale of her own residence. On the very next day, November 27, 1995, after Deshaies showed Donna Holden a house owned by Amy Weinschenk, Donna Holden and Amy Weinschenk executed a purchase and sale contract for the property. The contract contemplated a purchase price of $350,000 and was contingent on the Holdens selling their own house within sixty days of the contract. The Holdens did not sell their home within the time provided, and the contract expired by its terms on January 30, 1996. On February 8, 1996, Donna Holden terminated her exclusive listing agreement with Properties By The Sea. Apparently, the Holdens believed the termination of the listing agreement also terminated the buyer agreement. Shortly after the purchase and sale contract was terminated, the Holdens and Weinschenks engaged in further negotiations regarding the sale of the Weinschenks' residence, and Donna Holden and Amy Weinschenk entered into a second purchase and sale contract on February 19, 1996, without any further involvement by Deshaies. The parties added a handwritten paragraph to the preprinted contract that stated: "The seller agrees to pay any and all commissions owed on this transaction." Amy's husband Ric, who conducted the negotiations with the Holdens, testified in his deposition as to his understanding of this contract provision: "If any commission were due Mr. Deshaies on the sale of the Holden house or of my house that I would pay it, that's what I had agreed to." By a deed dated June 28, 1996, Amy Weinschenk transferred the property to Donna Holden for $350,000.

[¶ 3] When the Holdens refused Deshaies's request for the commission provided for in his exclusive buyer agreement, Deshaies sued the Holdens, seeking six percent of the $350,000 purchase price. The Holdens defended the suit by alleging the termination of the listing agreement relieved them of their obligation to pay any commission, and they filed a third-party complaint against the Weinschenks, claiming that if any commission in fact was owed, the purchase and sale agreement required the Weinschenks to pay it.[1] In their answer to the complaint, the Weinschenks generally denied any responsibility for the commission. Deshaies and the Holdens filed motions for a summary judgment. The Weinschenks' response to the Holdens' motion asserted that because they agreed the Holdens were entitled to a judgment as a matter of law against Deshaies, judgment should also be entered in their favor. They further claimed that if a summary judgment was not entered in favor of the Holdens, "it would be inappropriate to enter judgment on the Third–Party Complaint" and reserved the right to supplement their response. They did not defend against the Holdens' motion directly by filing a statement of material facts, nor did they file any affidavit contradicting the Holdens' statement of facts.

[¶ 4] At the hearing on the motions for summary judgment, the Holdens withdrew their argument that the termination of the exclusive listing agreement also terminated their exclusive buyer agreement with Deshaies, but argued that because the closing on the house did not occur until July 2, 1996, which was after the May 26 expiration of the exclusive buyer agreement, they were not responsible for payment of the commission. The court (*Saufley J.*) disagreed and held that the obligation to pay the commission was expressly determined by the date the property was "contracted to be purchased,"

---

1. Although the contracts involved in this litigation were entered into by Donna Holden and Amy Weinschenk individually, it is clear that their spouses were actively involved in the proceedings and are named parties to the action. Jeff Holden and Ric Weinschenk negotiated for the handwritten commission provision at issue in this case, and Amy Weinschenk testified that she deferred to her husband on all matters concerning the sale of the property and merely signed the documents Ric presented for her signature.

which in this case was February 19, 1996, several months before the expiration of the exclusive buyer agreement. The court accordingly entered judgment in favor of Deshaies against the Holdens. The court indicated that the clause in the February 19 contract for sale that provided Amy Weinschenk would pay "any and all commissions owed on this transaction" would ordinarily entitle the Holdens to a summary judgment against the Weinschenks, but the court allowed the Weinschenks time to file a supplemental opposition to the Holdens' motion based on their claim that they were surprised by the Holdens' withdrawal of their argument that the exclusive buyer agreement had been terminated before the parties signed the February 19 sales contract.

[¶ 5] The Weinschenks subsequently filed an opposition to the Holdens' motion for a summary judgment and moved to amend their answer to include the defenses of misrepresentation and mistake. In addition, the Weinschenks claimed for the first time that the February 19, 1996, purchase and sale agreement was superseded by a July 2, 1996, agreement that did not include a provision for the Weinschenks' payment of commission costs. The court (*Cole, J.*) ruled that the Weinschenks' motion to amend their answer was untimely and denied their attempt to introduce the July 2 agreement as "newly discovered" evidence pursuant to M.R. Civ. P. 60(b)(2). Accordingly, the court determined there was no genuine dispute as to any material fact and entered a judgment in favor of the Holdens. This appeal followed.

## II.

[¶ 6] The Weinschenks first argue that the court abused its discretion when it denied their motion to amend their answer because the motion was not brought in bad faith or for delay, and the amendment would not cause prejudice to the Holdens. "Whether to allow a pleading amendment rests with the court's sound discretion." *Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 605 A.2d 609, 616 (Me.1992). M.R. Civ. P. 15(a) provides that leave to amend should be freely given "when justice so requires." "If the moving party is not acting in bad faith or

for delay, the motion will be granted in the absence of undue prejudice to the opponent." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 (2d ed.1970). Nevertheless, "when summary judgment has been entered, the court should be reluctant to allow the addition of a new cause of action, particularly when the delay is unexplained." *Diversified Foods,* 605 A.2d at 616.

[¶ 7] Although the Weinschenks denied generally any obligation to pay the commission on the sale of their house in their answer to the Holdens' third-party complaint, they did not raise the defenses of misrepresentation and mistake until after the hearing on the motions for summary judgment. Furthermore, they initially asserted no opposition to the Holdens' motion for a summary judgment as required by Rules 56(e) and 7(d) despite the Holdens' clear intent throughout this litigation to seek indemnification from them based on the terms of the February 19 contract. The Weinschenks relied instead on the likelihood of the Holdens prevailing against Deshaies in the underlying claim to collect the commission. Although Rule 15(a) requires that leave to amend be liberally granted, *see, e.g., Barkley v. Good Will Home Ass'n,* 495 A.2d 1238, 1240 (Me.1985), " 'undue delay' removes any presumption in favor of allowing amendment." *Diversified Foods,* 605 A.2d at 616.

[¶ 8] In *Diversified Foods* the plaintiffs attempted to add a number of federal claims, already pending in the federal district court, to their state court complaint more than a month after a summary judgment was entered. *Id.* We held that the plaintiffs' knowledge of the defendants' objection to bringing some claims in state court and some in federal court, together with the plaintiffs' refusal to incorporate the federal claims in a previous motion to amend, supported the Superior Court's decision to deny leave to amend the complaint based on undue delay. *Id.* Similarly, the Weinschenks knew the Holdens would seek indemnification should the court find in favor of Deshaies, yet eschewed the opportunity to defend the lawsuit in a timely manner. In these circumstances, the denial of the Weinschenks' motion to

amend was an appropriate exercise of the court's discretionary authority.

### III.

[¶ 9] The Weinschenks next contend that even if the motion to amend was properly denied, genuine issues of material fact remain to be tried. In particular, the Weinschenks argue that they would not have consented to the provision requiring them to be responsible for the realtor commission but for the Holdens' misrepresentation that the buyer broker agreement had been terminated.[2]

■ [¶ 10] We review the entry of a summary judgment for errors of law, viewing the evidence in a light most favorable to the party against whom the judgment was entered. *Kandlis v. Huotari*, 678 A.2d 41, 42 (Me.1996). A party is entitled to summary judgment if there is no genuine issue of material fact and the party on the undisputed facts is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Chadwick-BaRoss, Inc. v. T. Buck Constr., Inc.*, 627 A.2d 532, 534 (Me.1993).

■ [¶ 11] Viewing the evidence in the light most favorable to the Weinschenks, we conclude that it is simply illogical to maintain that the Holdens and Weinschenks were acting under a mutual mistake that no commission would be due on the sale of the Weinschenk residence. If such was the case, there would have been no necessity to include the handwritten provision governing the payment of any commission in the purchase and sale contract. At the very least, the addition of the provision demonstrates

that the parties must have had some uncertainty about whether a commission would be due. Moreover, Ric Weinschenk's deposition testimony plainly reveals that he contemplated the possibility of being responsible for the commission:

Q. Did you have any discussion with Mr. Holden about the buyers agreement he entered into with Mr. Deshaies?

A. I did at some point in time, yes.

Q. Did you have any discussion in that regard prior to the second contract being signed?

A. Yes.

Q. What was that discussion?

A. Mr. Holden was—had asked me if I thought that there was a commission due to the buyer's broker, and I said that I never had a relationship with the buyer's broker. I didn't know the terms of the agreement between the buyer and his broker. I didn't know whether I was ever obligated to pay anything from the sale of our house or not. I had no doubt in my mind that I did not have any obligation to pay him as part of this contract. *And he said then if for some quirk of fate there was a commission due as a result of his having come to the house with a buyer's broker at some point in time would I mind paying him, and I said no, I wouldn't mind paying him,* I'm quite sure no commission is due. I do this every day, I've been doing it most of my adult life, and no doubt in my mind.

Q. Your agreement with Mr. Holden was that if any commission was due Mr. Deshaies you would pay it; is that correct?

---

2. The Weinschenks also contend the February 19 sales contract was superseded by a contract entered into by Amy Weinschenk and Donna Holden on July 2, 1996. The July 2 contract was virtually identical to the February 19 agreement except that the paragraph addressing broker commissions was crossed out. Under the terms of the latter contract, no commission would have been owed Deshaies because the contract for sale was entered into after the expiration of the exclusive buyer agreement he had with the Holdens. The July 2 contract was not produced by either the Holdens or the Weinschenks during discovery and was not introduced into the case until the Weinschenks included it with their supplemental opposition to the Holdens' motion. The

court ruled the contract was not "newly discovered" evidence within the meaning of M.R. Civ. P. 60(b)(2) ("On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . newly discovered evidence *which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)*." (emphasis added)) presumably because the document had at all times been in the Weinschenks' possession. The Weinschenks do not argue on appeal that the court erred by disregarding the contract and therefore are precluded from arguing that the contract relieves them of their obligation to pay the commission.

A. *If any commission were due Mr. Deshaies on the sale of the Holden house or of my house that I would pay it, that's what I had agreed to.*

(Emphasis added).

[¶ 12] Although Ric Weinschenk's testimony indicated he firmly believed no commission would be owed to Deshaies, it also makes clear that his belief was not based on any misrepresentation by the Holdens, who expressed their concern that Deshaies might in fact be owed a commission. Nor can Weinschenk's subsequent affidavit, which asserts that he and his wife "specifically relied on Mr. Holden's representations that the Holdens' buyer broker agreement with Mr. Deshaies had been terminated or had expired," be used to create a genuine issue of material fact. *See Zip Lube, Inc. v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735 (party cannot create an issue of fact by submitting an affidavit that contradicts his own prior sworn testimony). Because the February 19 purchase and sale agreement unambiguously makes Amy Weinschenk responsible for any commission owed on the sale of her property and the Weinschenks have failed to assert any material fact that is at issue, the court committed no error by entering a summary judgment in favor of the Holdens.

The entry is:

Judgment affirmed.

